RENDERED: JULY 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0719-MR

DONALD LAMB     APPELLANT

APPEAL FROM HARLAN CIRCUIT COURT
v.     HONORABLE KENT HENDRICKSON, JUDGE
ACTION NO. 19-CR-00298

COMMONWEALTH OF KENTUCKY     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, A. JONES, AND L. JONES, JUDGES.

CETRULO, JUDGE: Appellant, Donald Lamb, appeals from an order of the

Harlan Circuit Court revoking his probation. After review, we affirm.

## BACKGROUND

In December 2019, the Commonwealth indicted Lamb on one count

of rape in the first degree, a class B felony. The case lingered before the circuit

court for almost five years until the Commonwealth extended a plea offer,

amending the rape charge to one count of wanton endangerment in the first degree,

a class D felony.[1]  Lamb accepted the offer and entered his guilty plea on September 19, 2024.  On November 6, 2024, the court sentenced Lamb to five years of imprisonment probated for five years in accordance with the plea agreement.  In its final judgment, the circuit court specified that Lamb's probation was subject in part to the following condition: "THE DEFENDANT SHALL NOT COMMIT ANOTHER OFFENSE DURING THE PERIOD FOR WHICH THE SENTENCE REMAINS SUBJECT TO REVOCATION."

In April 2025, the Commonwealth moved to revoke Lamb's probation based upon an allegation of a new criminal arrest.  The first probation violation report, dated March 25, 2025, stemmed from Lamb's arrest on two misdemeanor counts for assault in the fourth degree following a domestic dispute on March 24, 2025, between Lamb and his wife, Emily.  One of the assault counts was later amended to strangulation in the first degree, a class C felony, and Lamb's probation officer issued an updated violation report dated April 16, 2025.

On April 30, 2025, the circuit court held a probation revocation hearing.  The Commonwealth called Lamb's probation officer, Salena Painter.  Officer Painter authored both violation reports and read the allegations into the record.  In particular, she recited the citation associated with Lamb's recent arrest,

---

[1] In its offer on a plea of guilty, the Commonwealth listed "evidentiary issues" as a reason for amending the indicted offense.

which noted Emily's statements to police that Lamb "punched her in the face and choked her multiple times[,]" and that during the assault, he also hit their infant. After Lamb's arrest on March 24, Officer Painter testified that she was contacted by Emily's sister, Sasha Templeton. Sasha relayed her concerns to Officer Painter that this latest incident was part of Lamb's recurring pattern of abuse and that she feared for the safety of her sister and her sister's children.

Officer Painter also testified that the Department for Community Based Services implemented a safety plan for Emily and her children that prohibited contact with Lamb. Officer Painter testified that she spoke with Emily after the incident and noted that Emily seemed primarily concerned about what would happen to Lamb. Given the nature and circumstances of Lamb's new offenses, Officer Painter believed that Lamb was a danger to the community and that a lesser sanction was inappropriate; accordingly, she recommended revocation of his probation.

The Commonwealth called Emily's sister, Sasha, as its next witness. Sasha stated that she went to her sister's house the night of Lamb's arrest after receiving a phone call from one of Lamb's neighbors. The neighbor told Sasha that she could hear Emily screaming for help and "that he was killing her." By the time Sasha arrived, Emily and Lamb were separated, and she did not witness Lamb "lay hands" on her sister. However, she observed "places" on Emily and holes in

the walls. Additionally, Sasha stated that Emily's eight-year-old child told her that Lamb "was a monster" and "hit his mommy." Sasha also testified that when she saw Emily that night, she was "bawling" and said Lamb strangled her to the point of losing consciousness. Emily also told Sasha that she was holding their infant daughter during the assault and that when Lamb punched Emily in the head, he "missed" and hit the baby.

Finally, Sasha stated that she contacted Officer Painter as she believed Emily would not tell the truth. She expressed her fear that Lamb would eventually kill her sister and said, "I'm standing up for her and those babies. If she's too scared to do it, I will."

After the Commonwealth concluded its proof, Lamb called Emily as his only witness. Emily stated that she did not call the police on March 24, 2025, and that it was her understanding that one of her neighbors called out of concern. She denied all allegations of abuse by Lamb and explained that she was angry and "not in [her] right mind" on March 24. During the Commonwealth's cross examination, Emily eventually admitted that she lied to the police. She testified that she did not want Lamb's probation revoked and wished for him to come back home.

At the end of the hearing, the circuit court issued oral rulings from the bench and found Lamb in violation of his probation. Regarding Emily's

testimony, the court stated its belief that she was trying to protect her husband and gave more credence to the testimonies from Officer Painter and Sasha and to the information in the probation violation reports. Based on that evidence, the court found that Lamb presented a significant risk to his prior victims and to the community at large and could not be adequately managed in the community. The court also referred to Lamb's underlying conviction, noting that he was convicted of "a violent offense, terroristic threatening," and now faced another "serious" charge, referring to the offense of first-degree strangulation. Given these findings, the court revoked Lamb's probation and imposed his sentence of five years of imprisonment. The court subsequently entered a written order consistent with its oral findings and conclusions. This appeal followed.

## ANALYSIS

"A decision to revoke probation is reviewed for an abuse of discretion." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009)). "Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). The discretion afforded to the circuit court when deciding whether to revoke probation, however, must be exercised "consistent with statutory criteria."

-5-

*New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019) (quoting *Andrews*, 448 S.W.3d at 780). "Specifically, before revoking probation a trial court must make two findings under [KRS[2]] 439.3106(1): (1) whether the alleged probation violation 'constitutes a significant risk to prior victims of the supervised individual or the community at large' and (2) whether the defendant 'cannot be appropriately managed in the community[.]'" *Id.* A trial court is required to make these findings, and those findings must be "supported by the evidence of record." *McClure v. Commonwealth*, 457 S.W.3d 728, 733 (Ky. App. 2015) (citing KRS 439.3106; *Andrews*, 448 S.W.3d at 776).

On appeal, Lamb argues that the circuit court abused its discretion by revoking his probation and raises two claims in support of reversing its decision. First, Lamb contends that the court mistakenly stated that terroristic threatening was the underlying conviction and a violent offense. Second, Lamb essentially asserts that Emily was the only witness with firsthand knowledge of the dispute on March 24 to testify at the hearing, and she denied all allegations of physical abuse. Based on her testimony and the court's misstatement on the underlying conviction, Lamb concludes the decision to revoke his probation was arbitrary, unfair, and unreasonable. We disagree.

---

[2] Kentucky Revised Statute.

It is uncontested that Lamb violated the conditions of his probation. The only argument against revocation that was presented to the circuit court was the assertion that the Commonwealth would face a difficult task proving the new offense(s) beyond a reasonable doubt based on Emily's recantation at the probation revocation hearing. However, as the circuit court correctly noted, it was not adjudicating the new charges, but determining whether to revoke Lamb's probation on the old charges. To that end, Lamb conceded that his arrest constituted a technical violation of his probation.

Here, the circuit court made both of the mandatory findings pursuant to KRS 439.3106(1)(a), holding that Lamb posed a "significant risk" to the community at large and could not be "appropriately managed in the community." Furthermore, the court's findings are supported by the record. *Kendrick v. Commonwealth*, 664 S.W.3d 731, 735 (Ky. App. 2023) ("[W]e may affirm a decision to revoke probation only if: a) the court made the required findings, *and* b) those findings are supported by the record.").

The court clearly found Emily's testimony unreliable, stating that "[i]t's pretty clear to the court that Mrs. Lamb is trying to protect her husband[,]" and noting "her hesitation in answering everything." The court's observation is

corroborated by the record.[3]  In light of the other evidence presented to the court, there were sufficient grounds for the court to find that Lamb presented a significant risk to the community and could not be adequately supervised.

As to the circuit court's statement that Lamb's underlying conviction was terroristic threatening and a violent offense, we first note the absence of any objection or attempt to correct or clarify the court's statement.  The court made a brief reference to Lamb's prior conviction when rendering its oral ruling, and although the court misidentified the underlying offense, this mistake is not dispositive.  In its written order, the court correctly noted that Lamb pleaded guilty to wanton endangerment in the first degree and that charge was in fact the offense for which his probated sentence was revoked.

Even if we were to disregard the court's oral statement completely, the court's revocation decision was still well within the "range of permissible decisions allowed by a correct application of the facts to the law." *McClure*, 457 S.W.3d at 730 (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

---

[3] For instance, on cross examination, the Commonwealth confronted Emily with her statements taken from Lamb's citation and repeated in the probation violation report and asked whether she lied to the police on the night of Lamb's arrest.  Emily responded, "I was mad, I was . . . I wasn't in my right mind I guess, I was upset."  The Commonwealth then asked, "Okay, but *did you lie* to the police?"  Approximately eight seconds elapsed before Emily quietly answered, "yes." When pressed further on why Emily wanted Lamb to return to the home to be around her and the children, Emily became tearful and expressed her belief that he was "trying to do better."

Accordingly, we find the circuit court did not abuse its discretion in revoking Lamb's probation.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Harlan Circuit Court's order revoking probation.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Assistant Public Advocate
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky